

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

May 15, 1939

Honorable Joe Kunschik
Commissioner of Labor
Bureau of Labor Statistics
Austin, Texas

Dear Sir:

Opinion No. O-959
Re: Exemptions from Texas
Boiler Inspection Law.

We are in receipt of your letter of May 2,
1939, in which you request our opinion on the following
questions:

1. "Is a steam boiler, having a pressure
in excess of 15 pounds per square inch, which is
used exclusively by the owner in the handling
and processing of milk produced from his own
cows and on his own farm, outside the city limits,
exempt from the provisions of the Texas Boiler
Inspection Law?

2. "Is a steam boiler, having a pressure
in excess of 15 pounds per square inch, which
is used outside the city limits by a cooperative
association of milk producers in the handling
and processing of milk produced on their re-
spective farms and belonging to the members
of said cooperative association, exempt from
the provisions of said law?

3. "Is a steam boiler, having a pressure in
excess of 15 pounds per square inch, which is used
by the owner in the handling and processing of
milk produced on his own farm where the owner in
addition thereto also handles and processes milk
for other persons for a consideration, exempt
from the provisions of said law?"

Pertinent sections of the Texas Boiler Inspection
Law, Article 5221c of Vernon's Annotated Civil Statutes,
are as follows:

Section 1 defines a "boiler" as meaning "any vessel used for generating steam for power or heating purposes."

Section 2 provides:

"No steam boiler, unless otherwise specifically exempted in this Act, shall be operated within the State of Texas unless such boiler has been registered with the Bureau of Labor Statistics and there shall have been issued a Certificate of Operation for such boiler, as hereinafter provided for, . . ."

Section 3 specifies the exemption:

"The following boilers are exempt from the provisions of this Act:

(2) Boilers on which the pressure does not exceed fifteen (15) pounds per square inch;

(4) Boilers used exclusively for agricultural purposes."

The questions you asked require a construction of the Act to determine the meaning of the term "agricultural purposes."

To use a boiler for "agricultural purposes" is to use it for purposes of "agriculture". The term "agriculture" is a very broad and comprehensive one, covering all those things ordinarily done by the farmer and his servants incident to carrying on his branch of industry, including, of course, the planting and harvesting of crops, the raising of fruit, the raising of cattle and hogs, and even including, to a variable extent, the preparation of those products of the farm for man's use. 3 Corpus Juris. Sec. Page 366. It requires no citation of authority to substantiate the proposition that milk is an agricultural product. District of Columbia v. Oyster, 15 D. C. 285, 286, 54 Am. Rep. 275. The problem of construction presented, however, is not so simple that it may turn entirely upon the nature of the product which the boiler is used to process. On the contrary, the term "agricultural purposes" must be interpreted as having that meaning which will comport with the intention of the Legislature. In other words, from the general context of the entire Act, we must determine whether it was the purpose and intention of

the Legislature in using such term to use it in its broadest significance, or whether it was intended that it should be used in a more narrow and limited sense. Gordon v. Buster, 257 S. W. 220.

An examination of the Act clearly reveals that it was the purpose and intention of the Legislature in enacting the Boiler Inspection Law to protect the public from dangers arising from the use and operation of defective boilers. In providing for certain exemptions from the operation of the Act, it is obvious that the Legislature had in mind that the uses to which particular boilers were exclusively put were such as to render those boilers, when put to those uses solely, less hazardous to the public, and therefore affording a reasonable ground for a classification exempting them from the operation of the Act. In other words, it is apparent that the Legislature deemed a boiler used "exclusively" for "agricultural purposes" less hazardous to the public, by reason of its location in rural areas, and the nature and intermittent character of the use to which it is put. To deny that the Legislature had this distinction in mind in making the exemption would be to raise a serious question as to the constitutionality of the exemption, and it is a fundamental canon of statutory construction that a statute will always be given a construction, when it is at all susceptible thereof, which squares with the Constitution, rather than a construction which will bring the Act into direct conflict with some constitutional provision.

The question of statutory construction thus presented is not free from difficulty. We have been able to find only two cases in this State which may be of any direct help in determining this matter. Both of these cases are by the Supreme Court of the State, and arose under the provisions of the Workmens Compensation Act. In each case the issue was presented whether or not the claimant was a farm laborer -- in other words, whether the claimant was engaged in an agricultural pursuit, so that he fell without the provisions of the Workmens Compensation Act.

In the case of Guerrero vs. United States Fidelity & Guaranty Co., 98 S. W. (2d) 796, the employer was engaged in the business of a florist and also in connection therewith, in the business of buying and selling shrubbery. The shrubbery bought was placed in the ground temporarily for the purpose of preserving it, and the claimant, an employee, performed that duty, among others. The court said:

Hon. Joe Kunschik, May 15, 1939, Page 4

". . . as concerns his business as a florist,'
in which Derrick was engaged in the growing of
plants and flowers for sale, he was undoubtedly
engaged in an agricultural pursuit, within the
purview of prior decisions, and those working for him
in that capacity were farm laborers.

"In the business of buying and selling nursery
stock, none of which was raised or grown by him,
but merely put into the ground temporarily for
preservation, Derrick was not engaged in agricul-
ture. In that capacity he was not tilling the
soil or engaged in the growing of the shrubbery.
In buying and selling the nursery stock we think
he was engaged as a jobber or dealer in articles
or things, just the same as if he had been selling
feedstuffs or plants and bulbs in a storeroom.
In this respect he was following a different business
from the business of keeping a greenhouse and grow-
ing flowers and plants."

In the case of Maryland Casualty Co. v. Dobbs,
100 S. W. (2d) 349, the court held that an employee of an
independent contractor who was engaged in the business of
spraying trees for the owners of citrus orchards was
not a farm laborer, within the meaning of the Workmens
Compensation Act. The court says:

"The business of spraying trees and orchards
is a well established independent business or
occupation. Defendant in error was not employed
by anyone engaged in the planting or cultivation
or growing of trees."

And the court continues by saying:

"In this case Dobbs had nothing to do with the
planting and growing of the citrus trees, but was
engaged by an independent contractor in the inde-
pendent business of spraying the trees. He was too
far removed from the tilling of the soil and the
cultivation of trees to be a farm laborer."

In view of the difficulties involved in so doing,
we expressly refrain from attempting by construction to
provide a formula by which it may be determined in all
conceivable situations which may arise whether a boiler is
being used exclusively for agricultural purposes. We
confine our opinion to the particular fact situations
presented by your questions, leaving other and different
fact situations which may arise to be determined accord-
ing to the peculiar facts involved in each instance.



Reasoning from the authorities cited above, we are of the opinion that so long as he who produces also processes the milk on the farm, the processing is but an incident and component part of "agriculture." But if the processing be dissociated from the production of milk, we are of the opinion that such processing is the pursuit of a separate and independent business or commercial undertaking.

Your first question is answered in the affirmative. The boiler is used exclusively by the owner in the handling and processing of milk produced from his own cows and on his own farm and outside the city limits. Its use is but an incident of and an adjunct to the management and operation of his farm, to prepare products produced by himself on that farm for market. We therefore believe it falls within the exemption of a boiler "used exclusively for agricultural purposes."

We assume the "cooperative association" to which your second question refers to be organized and incorporated under the provisions of Article 2514, Revised Statutes, 1925. As a corporate body, it is, in law, an entity separate and apart from its members. As such, it has no part in the production of the milk, but is engaged only in the business of handling and processing it. In other words, the "association" is engaged in a commercial enterprise, the processing of milk, and the boiler used is therefore not used "exclusively for agricultural purposes."

Your third question is also answered in the negative. One who processes milk produced by himself, and also engages in the processing, for a consideration, of milk produced by others, is not devoting the boiler used "exclusively" to "agricultural purposes." As to the processing, for a consideration, of the milk not produced by him, the farmer is using the boiler for "commercial" purposes.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _R W Fairchild_

R. W. Fairchild
Assistant

RWF:PBP

APPROVED:

_Gerald C. Mann_

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN